Eugene AUSTIN, Janice Austin, Dale Garrish, and Gerald McDonald, Plaintiffs,

v.

Larry TRANDELL, Ron Miller, Roger Coats, and Rick Maks, jointly and severally, Defendants.

No. 00–74166.

United States District Court, E.D. Michigan, Southern Division.

May 28, 2002.

Harold Dunne, Livonia, MI, for plaintiffs.

Ronald F. Graham, Buesser, Black, Bloomfield Hills, MI, for Carlton Roeser, defendant.

Kevin J. Gleeson, Sullivan, Ward, Southfield, MI, for Terry Pawlowski, Harvey, Kruse, Westin and Milan, P.C., defendants.

Christine D. Oldani, Plunkett & Cooney, Detroit, MI, Patrick M. Barrett, Plunkett & Cooney, Bloomfield Hills, MI, for Brady Hathaway, P.C., defendant.

Keefe A. Brooks, Daniel N. Sharkey, Butzel Long, Detroit, MI, for Phillip Seymour, Cooper, Shifman, Gabe, Quinn and Seymour, defendants.

Roger J. McClow, Klimist, McKnight, Southfield, MI, for Donny Douglas, Ron Miller, Larry Trandell,Roger coats, Rick Maks, defendants.

## MEMORANDUM AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

COHN, District Judge.

### I. Introduction

This is a labor case under section 501(b) of the Labor Management Reporting Dis-

closure Act, 29 U.S.C. § 501 (LMRDA) claiming breach of fiduciary duty. As will be explained below, the case as it is currently configured, based on plaintiffs' most recent pleading, consists of plaintiffs Eugene Austin, Janice Austin, Dale Garrish (Garrish) and Gerald McDonald (McDonald) who are suing union officers, Larry Trandell, Ron Miller, Roger Coats, and Rick Maks for their alleged improper use of union funds to the settlement of a sexual harassment lawsuit against another union officer, Donny Douglas. Before the Court is defendants' motion to dismiss on the grounds that certain plaintiffs lack standing, that plaintiffs' § 501 claims are time-barred, and plaintiffs fail to state a valid claim under § 501. For the reasons which follow, the motion will be granted and this case will be dismissed.

## II. Background

### A. Factual Background

Plaintiffs are members of UAW Local 594 (Local 594), which is the collective bargaining unit for employee of General Motors Corporation at its Pontiac, Michigan Truck and Bus facility. As of 1995, defendants Larry Trandell (Trandell), Roger Coats (Coats), and Rick Maks (Maks) were the highest ranking officers of Local 594; Donny Douglas (Douglas) was president, Trandell was vice-president, Coats was financial-secretary, and Maks was recording secretary.

In November, 1995, Cynthia Van Dusen (Van Dusen), Douglas's secretary, sued Douglas for sexual harassment and assault and battery (the "Van Dusen lawsuit"). Van Dusen also included Local 594, as Douglas's employer, as a defendant in the case.

Local 594 retained a number of attorneys to represent it in defending against the Van Dusen lawsuit: Carlton R. Rouser, Terry J. Pawlowski of the law firm of Harvey, Kruse, Westen & Milan, P.C., and the law firm of Brady Hathaway. Douglas retained, as his personal attorney, Phillip Seymour of the law firm Cooper, Schiffman, Gabs, Quinn & Seymour. All of the attorneys and law firms involved were originally named defendants in this case.

Douglas denied any wrongdoing and Local 594 argued that it had no liability because Douglas's conduct was outside the scope of his authority as President of Local 594. The Van Dusen lawsuit was settled January 1999, in paying Van Dusen $80,000 in workers' compensation benefits and an additional $150,000.

Under the terms of the settlement agreement, which was confidential, each party was to pay its own attorney fees. Initially, ULICO, Local 594's insurance carrier, paid the legal fees of Pawlowski and Harvey Kruse under the indemnification clause of Local 594's insurance agreement. However, in late 1996–1997, ULICO obtained a declaratory judgment in state court that it did not have to indemnify Local 594 for Douglas's actions. Local 594 paid the attorney fees of both firms, as well as the fees of Douglas's attorney, out of its treasury; Douglas, Miller, Trandell, Coats, and Maks approved the payments of the attorney fees.

The Van Dusen lawsuit was the subject of a union meeting on November 8, 1998. None of the named plaintiffs objected to the unions actions at that time. It is not known whether any other union members raised any concerns or objections.

On February 21, 1999, a union meeting was held at which Eugene Austin and Janice Austin demanded an accounting of the monies spent out of the union's treasury regarding the Van Dusen lawsuit. Defendants apparently refused to answer questions about the Van Dusen lawsuit and the payments to the attorneys. Eugene Austin also requested permission to move that the union members not be responsible for any monies spent on the Van Dusen law-

suit. Eugene Austin was ruled "out of order."

On February 10, 2002, at another union meeting, McDonald offered a motion that Local 594 sue defendants to recover all monies spent in the settlement of the Van Dusen case, including attorney fees. The motion was ruled "out of order." Also at the meeting, Eugene Austin asked Trandell if the union dues were used to pay Trandell's attorney in the Van Dusen case. Trandell replied no. J. Austin then stated that she had information that Local 594 paid Douglas' attorney for the Van Dusen lawsuit, to which Trandell replied he "did not know anything about that."

### B. Procedural History

On September 18, 2000, Garrish and McDonald, as individuals and "on behalf of a class of 5000 members of the UAW Local 594" filed a Complaint and jury demand naming Douglas, Miller, Trandell, Coats, and Maks, as well the law firms and lawyers that represented UAW Local 594 in the Van Dusen lawsuit, as defendants (the Initial Complaint). The complaint asserted a claim of criminal conspiracy under 18 U.S.C. § 1961 (RICO) and a breach of fiduciary claim under § 501.

In November and December 2000, all of the defendants filed motions to dismiss or for summary judgment. These motions were not acted on.

On January 12, 2001, before responding to defendants' motions, Garrish and McDonald filed a First Amended Complaint against Douglas, Miller, Coats, Trandell and Maks, and the various law firms and lawyers involved in the Van Dusen lawsuit. The First Amended Complaint was also filed "on behalf of a class of 5000 members of the UAW Local 594." The First Amended Complaint made the following three claims:

1. Violation of 29 U.S.C. § 501 by Douglas, Miller, Trundle, Coats, and Maks, for breach of fiduciary duty for paying Douglas's attorney fees out of the Local 594 treasury without informing the union members or Executive Board as such, as well as for paying the settlement money to Van Dusen without prior approval by the union members;

2. Criminal conspiracy under RICO, 18 U.S.C. § 1961, by all the defendants for conspiring to embezzle funds from Local 594 to pay for Douglas's personal attorney and the settlement funds paid to Van Dusen. Plaintiffs say that Douglas, Miller, Trundle, Coats, and Maks had no authority to authorize payments for attorney fees without the members' approval and that all the attorneys and law firms knew so when they accepted the money. Plaintiffs also say that the defendants conspired together to defraud Local 594, and protect Douglas, by causing Local 594 to pay for Douglas's personal tortious conduct by failing to have Local 594 bring a third-party complaint against Douglas. Plaintiffs further say that Douglas, Miller, Trundle, Coats, and Maks lied to the UAW International Union as to the reason why Local 594 needed to borrow money from it;

3. Legal Malpractice by the attorney and law firm defendants in failing to bring Douglas into the Van Dusen lawsuit as a third-party defendant, knowing that the allegations of sexual harassment were intentional torts that were outside Douglas's scope of authority as president of Local 594.

Thereafter, all of the defendants filed motions to dismiss the First Amended Complaint. As to the § 501 claim, defendants argued that Garrish and McDonald had failed to comply with the statutory requirement under § 501(b) which re-

quires a plaintiff to seek leave to file a complaint and show good cause for filing a complaint under § 501. A hearing on the motions was held on May 23, 2001.

On May 30, 2001, the Court issued a Memorandum and Order dismissing the legal malpractice and RICO claims. As to the § 501 claim, the Court stated:

Section 501 of the Labor Management Reporting Disclosure Act (LMRDA) (also known as the Landrum–Griffen Act), allows a union member to sue union officers for failing "to hold [the union's] money and property solely for the benefit of the [union]." 29 U.S.C. 501(a). However, § 501(b) states that "[n]o such proceeding shall be brought except upon leave of the court obtained upon verified application and good cause shown ..." 29 U.S.C. § 501(b). Based upon this language, defendants argue that plaintiffs' § 501 claim must be dismissed because plaintiffs failed to seek leave of court prior to filing suit.

Plaintiffs do not dispute that they failed to seek leave of the Court before filing suit. Rather, they argue that "a mere lack of formality in obtaining leave of the Court to proceed is not grounds for dismissing the action ... Permission may be granted after the complaint is filed, and if so, it is done nun pro tunc without necessitating a dismissal and re-filing of the complaint." *Brink v. DaLesio,* 453 F.Supp. 272, 276 (D.Md.1978) (citing *Sabolsky v. Budzanoski,* 457 F.2d 1245 (3d Cir.1972)).

However, as defendants point out, the plaintiffs in *Brink* and *Sabolsky,* had filed a verified complaint and, in *Brink,* the complaint had contained a request for leave to file it. Here, neither the original complaint, nor the amended complaint is verified and there has been no request to proceed from plaintiffs in any pleading or paper filed with the Court.

Moreover, contrary to plaintiffs assertion that, "Assuming Plaintiffs seek leave of court to file their Complaint under § 501, the Court will have the opportunity to decide whether Plaintiffs have complied with § 501," Plaintiffs' Response [Brief] to the Motion to Dismiss filed by Defendants Douglas, Miller, Trandell, Coats, and Maks at 4, **the plain language of § 501 indicates that leave of the Court is a mandatory condition precedent to acceptance of a complaint.** Although the Sixth Circuit has not spoken directly on this issue, a strict reading of the statute is consistent with the intent of the statute to protect union officials from unjust harassment, *see Adams–Lundy v. Flight Attendants,* 844 F.2d 245 (5th Cir.1988), and with the federal policy of non-interference with internal union affairs, *see Building Material Drivers Local 420 v. Traweek,* 867 F.2d 500 (9th Cir.1989). Further, such an approach is in harmony with several other circuits. *Id.; see also Adams–Lundy, supra, Talbot v. Robert Matthews Dist. Co.,* 961 F.2d 654 (7th Cir. 1992); *Purcell v. Keane,* 406 F.2d 1195 (3d Cir.1969).

**However, rather than dismissing the case and forcing plaintiffs to re-file, the case will be stayed for 30 days to allow plaintiffs to file an appropriate motion for leave. If plaintiffs fail to comply, the case will be dismissed. The plaintiff shall serve a copy of the motion upon each of the defendants.** Memorandum and Order at p. 13 (emphasis added).

On June 29, 2001, an Application for Leave of Court to File Complaint under 29 U.S.C. § 501 was filed (the Application). The Application named *for the first time* Eugene Austin as a plaintiff, and in fact

named him as the lead plaintiff. Garrish and McDonald continued as named plaintiffs. Unlike the Initial Complaint and the First Amended Complaint, the Application did not indicate that plaintiffs were suing on behalf of any class of union members. The Application named Douglas, Miller, Trandell, Coats and Maks as defendants. A few days later, on July 2, 2001, plaintiffs submitted a brief in support of the Application. Neither the Application nor brief were served on defendants, in contravention of the Court's Memorandum and Order.[1]

On August 3, 2001, after being informed that an application for leave was filed, Douglas, Miller, Trandell, Coats, and Maks filed a response to the Application, arguing that Douglas should be dismissed as a defendant because he was not President of the union at the time of the Van Dusen lawsuit and that plaintiffs had not shown good cause for filing a complaint.

On August 28, 2001, the Court entered a partial judgment, based on its May 30, 2001 Memorandum and Order, under Fed. R.Civ.P. 54 and 58 "dismissing the RICO and legal malpractice claims (in without prejudice) as to the defendant lawyers and law firms."

A hearing on the Application was held on September 19, 2001 at which the Court indicated that plaintiffs Garrish and McDonald would be permitted leave to file a claim under § 501 "without prejudice to any of the defendants' rights" to any defenses.

That same date, September 19, 2001, the Court issued an Order granting the Application for the above reasons. The Order also stated that the defendants in the case are "Donny Douglas, Ron Miller, Larry Trandell, Roger Coats and Rick Macks [sic]" The Court did not set a time limit for filing a complaint. However, plaintiffs failed to file an amended complaint within a reasonable time after the hearing.

Five months later, on February 12, 2002, because plaintiffs had not yet filed a proper complaint, the Court *sua sponte* issued an order directing plaintiffs to file an amended complaint on or before February 25, 2002.

On February 25, 2002, plaintiffs filed an Amended Complaint naming Eugene Austin, Garrish and McDonald as plaintiffs. Also named *for the first time* in the complaint as a plaintiff is Janice Austin. Douglas is no longer named as a defendant; Trandell, Miller, Coats, and Maks, are the only defendants (hereafter, defendants will be referred to as "the union officials") Like the prior § 501 claims plead in plaintiffs' prior complaints, plaintiffs seek repayment to the Local 594's treasury of all monies spent on the Van Dusen lawsuit, including attorney fees.

On March 18, 2002, the union officials filed a motion to dismiss the Amended Complaint for the following reasons: (1) Garrish has no standing under § 501 because he did not ask Local 594 to sue to recover damages as required by §.501(b), (2) J. Austin also lacks standing because she did not ask Local 594 to sue, nor did she seek leave to file a complaint, (3) all of the plaintiffs' claims are barred by the statute of limitations, and (4) plaintiffs have failed to allege facts to support a breach of fiduciary duty claim under § 501.

### III.  Legal Standard

When analyzing a motion to dismiss pursuant to Rule 12(b)(6), the Court must take the well-pleaded allegations as true. *Mi-*

---

1. The fact that plaintiffs never served these papers is taken from the docket sheet, which does not indicate that a proof of service was filed in conjunction with these papers, and the union officials' statement that they were not served with these papers.

*ree v. DeKalb County*, 433 U.S. 25, 27 n. 1, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977). "[W]hen an allegation is capable of more than one inference, it must be construed in the plaintiff's favor." *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1039–40 (6th Cir.1991). "[A] complaint should be dismissed for failure to state a claim only where 'it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Monette v. Electronic Data Systems*, 90 F.3d 1173, 1189 (6th Cir.1996) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

### IV. Analysis

#### A. Section 501

Section 501(a) of the LMRDA provides, in relevant part:

> [T]he officers, agents, shop stewards, and other representatives of a labor organization occupy a position of trust in relation to such organization and its members as a group. It is therefore the duty of each such person ... to refrain from dealing with such organization as an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization.

29 U.S.C. § 501(a).

Plaintiffs claim Brown's actions violated the fiduciary duty outlined in § 501(a). Section 501(b) then provides, in relevant part:

> **When any officer** ... of any labor organization is alleged to have violated the duties alleged in subsection (a) of this section and the labor organization ... **refuse(s) or fail(s) to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization,** such member may sue such officer ... in any district court of the United States.... **No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown.**

29 U.S.C. § 501(b) (emphasis added).

■ Thus, before filing suit under § 501, a plaintiff/union member (1) must have requested the union file suit or secure an accounting, and the union must have failed to do so, and (2) plaintiff must first seek leave of court and show good cause for filing a complaint. As noted in the Memorandum Opinion, the leave of court requirement is a jurisdictional prerequisite to suit. The requirement that a member first request the union to file suit is likewise a condition precedent to filing suit. *See Safe Workers' Organization, Chapter No. 2 v. Ballinger*, 389 F.Supp. 903, 908 (S.D.Ohio 1974) and cases cited therein.

Although plaintiffs continue to assert that they are suing not only on behalf of themselves, but also on behalf of other members of Local 594, no class has been certified and the Amended Complaint does not seek class action status. Accordingly, each prospective plaintiff's claim under § 501, and the issues arising from it, must be separately considered.

#### B. Eugene Austin

Eugene Austin was added as a prospective plaintiff for the first time when the Application was filed—on June 29, 2001. Thus, Eugene Austin sought leave to file a complaint. According to the Application and the Amended Complaint, Eugene Austin also requested the union during a meeting on February 21, 1999 for an accounting of monies spent in regards to the Van Dusen lawsuit. Amended Complaint at ¶ 74. However, prior to that time, on November 1, 1998, Eugene Austin wrote to the UAW requesting an investigation into the spending of Local 594 funds by its officers. Amended Complaint at ¶ 69.

The union officers argue that Eugene Austin's claim fails because it is barred by the statute of limitations and Eugene Austin's claim cannot relate back to the prior pleadings filed in this case.

### 1. Statute of Limitations

■ The parties agree that as there is no statute of limitations in LMRDA, the most analogous state statute of limitations applies. *See O'Hara v. Teamsters Union Local 856*, 151 F.3d 1152, 1161 (9th Cir. 1998). The parties also agree that because a § 501 case is akin to a shareholder derivative action and that Michigan's statute of limitations for breach of fiduciary duty actions brought against corporate officers, as found under M.C.L.A. § 450.1541a(4), applies. Section 450.1541a(4) provides:

> An action against a director or officer for failure to perform the duties imposes by this section shall be commenced within 3 years after the cause of action has accrued, or within 2 years after the time when the cause of action is discovered or should reasonably be discovered, by the complainant, whichever occurs first.

Eugene Austin argues that his cause of action "accrued" on February 21, 1999, when he asked the union for an accounting. Because he sought leave to file a complaint within three years after, or on June 29, 2001, his claim is timely.

The union officials, however, argue that the actions complained of—regarding the Van Dusen lawsuit—were announced at the November 8, 1998 meeting. Because Eugene Austin's cause of action should have been "discovered" by November 1998 or at the latest by February 1999, the statute of limitations is 2 years. Because he did not seek leave until June 29, 2001 and did not actually file the Amended Complaint until February 2002, his claims are time barred.

As seen from above, the parties focus on different parts of the statute. Eugene Austin focuses on the "accrual language";

the union officials focus on the "discovery" language, both arguing that the trigger date is February 21, 1999 (at the latest). Eugene Austin argues that since the accrual date and the discovery date are the same, the three year limitations period applies.

Both parties cite *Baks v. Moroun*, 227 Mich.App. 472, 576 N.W.2d 413 (1998). In *Baks*, the Michigan Court of Appeals applied § 1541a(4) to find that the plaintiff/shareholders claims both accrued in December 1989 and were discovered in December 1989. Because plaintiffs did not file within 2 years from that date, their claims were time barred. *Baks* does not offer much in the way of guidance, although it does support the conclusion that Eugene Austin's claims are time barred. First of all, the plain language of the statute says "whichever occurs first." If the accrual date and the discovery date are the same, it would only make sense that the 2 year limitation period applies because that would occur first. Second, the Michigan Court of Appeals interpreted the limitations periods under § 1541a(4), stating that " § [1]541a(4) then established a two-year period of limitations, measured from the date of the breach of such duty is discovered or reasonably should be discovered, combined with a three-year period of repose, to govern actions based on breach of such duties." 227 Mich.App. at 479, 576 N.W.2d 413. Thus, § 1541a(4) provides a 2 year statute of limitations and a 3 year period of repose. These are different concepts. As one court explained:

> "The period of repose gives effect to a policy different from that advanced by a period of limitations; it is intended to terminate the possibility of liability after a defined period of time, regardless of a potential plaintiff's lack of knowledge of his cause of action." *Mega v. Holy Cross Hospital* (1986), 111 Ill.2d 416, 422, 95 Ill.Dec. 812, 490 N.E.2d 665 *cit-*

*ing Gates Rubber Co. v. U.S.M. Corp.* (7th Cir.1975), 508 F.2d 603, 611 (Clark, J., dissenting.).

Although in a general sense statutes of repose and statutes of limitations are similar in that they prescribe the periods within which actions may be brought, the terms are not interchangeable. **A statute of repose terminates the right to bring an action when the event giving rise to the cause of action does not transpire within the specified interval.** The injured party no longer has a recognized right of action, and the harm that has been done is damnum absque injura—a wrong for which the law affords no redress. (See *Rosenberg v. Town of North Bergen* (1972), 61 N.J. 190, 293 A.2d 662, 667.) As one court has said, "[a] **statute of limitations normally governs the time within which legal proceedings must be commenced after the cause of action accrues. *** A statute of repose, however, limits the time within which an action may be brought and is not related to the accrual of any cause of action. The injury need not have occurred much less discovered."** *Bradway v. American National Red Cross* (11th Cir.1993), 992 F.2d 298, 301.

*Goodman v. Harbor Market, Ltd.*, 278 Ill. App.3d 684, 690, 215 Ill.Dec. 263, 663 N.E.2d 13, 18 (1995) (emphasis added).

■ Thus, under § 1541a(4) a plaintiff must file suit within 2 years from the discovery of the cause of action and in no event can they file any later than 3 years from the date of the accrual, or the alleged wrong.

In this case, Eugene Austin admits that he discovered his cause of action no later than the February 1999 meeting, where he requested an accounting of monies paid for the Van Dusen lawsuit. He did not seek leave to file a complaint under § 501 until June of 2001, more than 2 years later. His claim is therefore time-barred.

### 2. Relation Back

■ Eugene Austin, however, argues that his claim is saved because a timely complaint was filed on September 18, 2000—the date of the Initial Complaint filed by Garrish and McDonald seeking class certification—and a timely First Amended Complaint was filed on January 12, 2001, which named Garrish and McDonald as plaintiffs and also sought class certification. Eugene Austin argues that the Application and Amended Complaint, in which his name first appears as a plaintiff, "relate back" to both of these prior pleadings. The union officials argue that there can be no relation back because neither the Initial Complaint nor the Amended Complaint presented a justiciable cause of action because neither pleading satisfied the statutory prerequisites for filing a § 501 claim (1) request for union action and (2) leave of court. Thus, the union officials argue, neither Garrish nor McDonald, who were the only named plaintiffs, had a cause of action when they filed the Initial Complaint and First Amended Complaint.

Fed.R.Civ.P. 15(c)(3) allows a plaintiff to add a new party and, for statute of limitations purposes, the amended pleading relates back to the date of the original complaint if the party being brought into the action knew or should have known that "but for a mistake concerning the identity of the proper party, the action would have been brought against the party."

■ However, it is axiomatic that in order for the doctrine of relation back to apply, the prior pleadings must be properly filed and the court must have jurisdiction over the claim at the time of the prior pleadings. Here, because neither Garrish nor McDonald had sought leave to file a complaint nor asked the union to take

action, both of which are prerequisites to filing suit under § 501, neither the Initial Complaint nor the First Amended Complaint were properly filed under § 501. In other words, the Court did not have jurisdiction over Garrish's or McDonald's § 501 claims at the time of the Initial Complaint or the First Amended Complaint. Thus, there is no prior pleading to which Eugene Austin's § 501 claim can relate back. As one court has succinctly explained:

> [T]he Rule's [Rule 15] relation back doctrine only operates to give a plaintiff the benefit of an earlier filing date if the court in which the matter was first filed had jurisdiction over the matter at that earlier date. Put another way, the Rule and its relation back doctrine cannot confer jurisdiction where none existed before. *See, e.g., Houston v. U.S. Postal Service,* 823 F.2d 896 (5th Cir.1987) (rejecting argument that filing FTCA action in state court tolled statute of limitations because state court could never have adjudicated FTCA claim); *Reynolds v. United States,* 748 F.2d 291, 293 (5th Cir.1984) (holding that tardy amendment naming United States as FTCA defendant could not confer jurisdiction on court even if amendment related back to time suit was instituted because suit had been filed prior to administrative exhaustion). Thus, here, Salazar may amend her complaint and obtain the benefit of her original state court filing date *only if the state court had jurisdiction over the action at that time.*

*Salazar v. United States Postal Serv.,* 929 F.Supp. 966, 970 (E.D.Va.1996). *See also Brewer–Giorgio v. Producers Video, Inc.,* 216 F.3d 1281, 1285 (11th Cir.2000) (plaintiff's untimely claims in copyright action did not relate back to original complaint where plaintiff had filed original complaint before registering her copyright, a prerequisite to filing suit and district court lacked

jurisdiction at time original complaint was filed).

Moreover, it is even more certain that the relation back doctrine does not apply to save Eugene Austin's claim because what is involved is not merely the addition of a new claim, but a new party. Under § 501, it is clear that each union member filing suit must seek leave of court and first request the union to take action. Rule 15 cannot be used to bootstrap an untimely claim to a claim filed by other plaintiffs, neither of whom satisfied these two prerequisites for filing a § 501 claim. Thus, Eugene Austin's claim must be dismissed.

Plaintiffs rely on *Brink v. DaLesio,* 453 F.Supp. 272 (D.Md.1978) to support the argument of relation back. In *Brink,* the plaintiffs filed a complaint under § 501 without seeking leave. Defendants moved to dismiss on the grounds that the court lacked subject matter jurisdiction. The court declined to grant the motion, stating that "a mere lack of formality in obtaining leave of the Court to proceed is not grounds for dismissing the action. Permission may be granted after the complaint is filed, and if so, it is done Nunc pro tunc without necessitating a dismissal and refiling of the complaint." *Brink,* 453 F.Supp. at 275.

Plaintiffs' reliance on *Brink* is misplaced. First, the statement in Brink simply means that a failure to seek leave does not necessarily require dismissal of the complaint. The Court agrees with this principle; it did not dismiss plaintiffs' Initial Complaint, but rather allowed them to seek leave. However, seeking leave of court is nonetheless a statutory prerequisite to filing a complaint and a complaint is not properly filed until this prerequisite is satisfied. Second, although the court in *Brink* used the phrase "nunc pro tunc," it did so only in the context of not requiring

dismissal and permitting plaintiffs to seek leave of court, which they did. Indeed, as explained in the Court's prior Memorandum and Order, quoted above, the plaintiffs in *Brink* filed a verified complaint and requested leave to file it. Plaintiffs read too much into the language in *Brink*. *Brink* did not involve the issue of relation back or the statute of limitations. Allowing relation back in these circumstances would completely eviscerate the statutory prerequisites for bringing a § 501 claim and the statute of limitations.

### B. Janice Austin

■ The union officials argue that Janice Austin's § 501 claim must be dismissed because her claim is barred by the statute of limitations and because she has never sought leave to file a complaint. Janice Austin argues that her claim is timely based on relation back to the Initial Complaint and the Amended Complaint.

The union officials' argument is well-taken. Janice Austin has never sought leave to file a complaint as required under § 501. Her name does not appear in the Application, but rather magically appears as a named plaintiff for the first time in the Amended Complaint filed on February 25, 2002. Moreover, according to the allegations of the Amended Complaint, Janice Austin first requested the union to take action regarding the monies spent on the Van Dusen law suit on February 10, 2002, three years and three months after the Van Dusen settlement was announced at the December 1998 meeting. Like Eugene Austin, Janice Austin cannot rely on the prior pleadings of others, which were defective, to assert an untimely claim. More importantly, however, Janice Austin has never sought leave to file a claim under § 501. Her claim therefore must be dismissed.

### C. Dale Garrish

■ The union officials say that Dale Garrish's § 501 claim must be dismissed because although he requested leave to file a complaint, he never requested the union to take any action before filing suit. The Amended Complaint makes no allegation to the contrary and make no mention of whether Garrish satisfied this statutory requirement. Thus, to date Garrish has not satisfied the two basic requirements for filing a § 501 claim and his claim must therefore be dismissed.

### D. Gerald McDonald

■ The union officials argue that McDonald's claim is also time barred and not saved by the doctrine of relation back because McDonald did not make a request for the union to act until February 10, 2002, more than 3 years after the November 1998 meeting and well after he attempted to assert a § 501 claim. Although McDonald filed the Initial Complaint in September 2000, the court had no jurisdiction over his § 501 claim at the time. McDonald did not seek leave to file a complaint until the Application was filed on January 10, 2001, at which time he still had not yet requested the union to take action regarding the Van Dusen lawsuit. Thus, the earliest date that McDonald could properly bring a § 501 claim was after February 10, 2002. Based on the allegations in the Amended Complaint, filed on February 25, 2002, McDonald has finally now satisfied the statutory requirements for bringing a § 501 claim.

Unfortunately, McDonald has acted too late—the statute of limitations had already run by the time he made the request to the union, which was more than two years after the November 1998 meeting. Indeed, McDonald first filed a § 501 claim in September of 2000, yet never even attempted to fully comply with the statutory requirements until almost 2 years later. McDonald's § 501 claim must therefore be dismissed.

## V. Conclusion

The statutory prerequisites for filing a § 501 claim are neither burdensome nor onerous, yet none of the named plaintiffs have been able to satisfy these requirements and file proper pleadings within the limitations period. Plaintiffs have spent a good deal of time attempting to end-run around these requirements, but the fact remains that neither the Initial Complaint nor the First Amended Complaint make out a proper claim under § 501 as to any of the now named plaintiffs. Plaintiffs Garrish and McDonald may have "jumped the gun" in filing the Initial Complaint on September 18, 2000 before seeking leave and before requesting union action. Eugene Austin and Janice Austin, the latter of which has never applied for leave, have attempted to piggyback their § 501 claims on Garrish's and McDonald's § 501 claims, neither of which were ever properly filed.

Having found that none of the named plaintiffs have a properly filed § 501 claim, the Court need not address the union officials' argument that the § 501 claim being asserted fails to state a claim upon which relief may be granted.

Accordingly, the union officials' motion to dismiss is GRANTED.

SO ORDERED.